UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

VALENTIN SORTO,

       Petitioner,    **CORRECTED**
                **MEMORANDUM AND ORDER**
  -against-        01-CV-2955 (ERK)

VICTOR HERBERT, SUPERINTENDENT,
        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Korman, Ch. J.

   Valentin Sorto was convicted by a jury of murder in the second degree, assault in the

second degree, and criminal possession of a weapon in the third degree for the stabbing of

a member of a rival gang whom petitioner believed to be responsible for shooting a fellow

gang member. The Appellate Division affirmed the conviction after holding that the proof

of petitioner's guilt was legally sufficient and that the remainder of his claims were "either

unpreserved for appellate review or without merit." People v. Sorto, 274 A.D.2d 487 (2d.

Dept. 2000), leave to appeal denied, People v. Sorto, 95 N.Y.2d 893 (2000). Petitioner then

filed this petition for a writ of habeas corpus raising the same five claims raised in his

Appellate Division brief, albeit in the halting language of a pro se petitioner. Only two of

those claims have sufficient merit to warrant discussion. They are petitioner's Batson claim

and his claim regarding the admissibility of his confession.

   Because the latter claim may be more quickly disposed of, I address it first. I then turn

to the Batson claim which requires a more detailed discussion. Petitioner argued in his

Appellate Division brief that his oral and written statements to the police should have been suppressed because (1) his initial statement was the product of an unlawful custodial interrogation, and (2) his subsequent oral and written statements were involuntary because they were obtained over a five-hour period, during which he was confined to an office in the police station, was advised only once of his constitutional rights, was subjected to antagonistic questioning, and was given only a soda to drink.

Petitioner's claim that his initial statement was the product of an unlawful custodial interrogation implicates two separate issues. The first is a Fourth Amendment issue relating to the validity of his detention — an issue which he is foreclosed from raising here. See Stone v. Powell, 428 U.S. 465 (1976). The second relates to the failure to provide Miranda warnings before petitioner made his brief initial inculpatory statement. This argument fails because petitioner was provided with his Miranda warnings before he made his subsequent confession. The admissibility of the latter statement is not affected by the alleged failure to administer the Miranda warning prior to the initial inculpatory statement. Missouri v. Seibert, 124 S.Ct. 2601 (2004); Oregon v. Elstadt, 470 U.S. 298 (1985). This is particularly so where, as here, there is no evidence that the "Miranda warning was deliberately withheld to obscure both the practical and legal significance of the admonishment finally given." Missouri v. Seibert, 124 S.Ct. at 265 (Kennedy, J., concurring). Indeed, even if the failure to provide the Miranda warning was deliberate, the split on this issue in the Supreme Court in Missouri v. Seibert (decided after the judgment of conviction became final) suggests that

2

it would not have been objectively unreasonable to have rejected the <u>Miranda</u> objection to the subsequent confession. Under these circumstances, the properly admitted confession rendered harmless any error in the admission of the initial inculpatory statement.

Moreover, the trial judge specifically credited the uncontroverted testimony of the law enforcement officers at the suppression hearing. This finding and the more specific findings, which are contained in his written opinion of January 29, 1998, are presumed to be correct unless overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption has not been overcome and it is sufficient to render reasonable the legal conclusion that the confession was given voluntarily and that petitioner had been advised of his <u>Miranda</u> rights and knowingly and voluntarily waived them. While this claim was included among those the Appellate Division rejected as "unpreserved for appellate review or without merit," it is clear it was rejected on the merits and is entitled to AEDPA deference. The District Attorney did not raise a procedural forfeiture argument with respect to this claim in the Appellate Division and it was properly preserved by a timely motion to suppress.

I turn now to petitioner's <u>Batson</u> claim that the trial judge erred in rejecting his <u>Batson</u> objection to the peremptory challenge of three prospective jurors. This claim involves two discrete objections. The first is that the trial judge erred in holding that petitioner had not established a <u>prima facie</u> showing sufficient to require a race-neutral explanation of one peremptory challenge from the Assistant District Attorney, and the second is that the trial judge erred in accepting the race-neutral explanation of the Assistant District Attorney with

respect to the peremptory challenge of two other jurors.

The discussion of the first issue involves the strike of two jurors with Hispanic surnames. They were jurors Martinez and Rivera. Petitioner's counsel had asserted initially that Rivera's Salvadorian background was the reason for improper peremptory discharge directed to him. The Supreme Court has not decided whether or when national origin discrimination is a cognizable group for Batson protection. The Second Circuit only recently declined to reach the issue, Rodriquez v. Schriver, 392 F.3d 505, n.9 (2d Cir. 2004), although the First Circuit has rejected Batson claims on this basis where there has been no evidence that the particular nationality has been or is currently subjected to discriminatory treatment. Unites States v. Marino, 277 F.3d 11, 23 (1st Cir. 2002) (internal citations omitted). Under these circumstances, the rejection of petitioner's national origin Batson objection was not a decision that was "contrary to, or involved an unreasonable application of clearly established . . . law, as determined by the Supreme Court." 28 U.S.C. § 2254 (d)(1).

The alleged improper motive for the peremptory challenge was later broadened to include Hispanics and "minorities" generally. I address this issue next. The peremptory challenge of Martinez and Rivera came after the voir dire of the first twelve prospective of jurors. By the time the parties exercised the peremptories, six of the twelve had been removed for reasons not relevant. The initial challenges were to the six remaining jurors. Tr. 126. Of these six, the Assistant District Attorney exercised his peremptory challenge against Martinez, Rivera and Harper (an African-American juror).

4

The initial challenge to Martinez was for cause and was made prior to the exercise of peremptory challenges. Mr. Martinez was a National Park Ranger. Tr. 55. In his answer to what appears to have been the off-the-record voir dire conducted by counsel, he "mentioned" that he would "not be able to leave sympathy for gang members out of his consideration of the evidence in this case" and that he "would be unable to accept an interpreter's interpretation of testimony if he disagreed with it based on his knowledge of Spanish." Tr. 117. Martinez was then questioned on the record about these two issues. Id. Specifically, he told the trial judge that he would "accept the interpretation of the interpreter." Tr. 119. Mr. Martinez's responses on the issue of sympathy for gang members, which derived from his upbringing in the Bronx, were more problematic. Tr. 120-122. When pressed by the Assistant District Attorney, he responded affirmatively to the question of whether his past experiences "would affect you when you evaluate this." Tr. 121. At this point, petitioner's counsel prefaced a question with the admonition that "[w]hether the defendant is a gang member or not is really not the issue" and that it "means nothing whether [the defendant] belonged to a gang or he was a devil worshiper. The only question here has to be has the proof established that he murdered this man." Id. Then he asked Martinez "are you going to say well, he's a member of a gang, that absolves him of murder[?]" Mr. Martinez responded that he would not do so. Tr. 122. After a colloquy, the trial judge agreed with petitioner's counsel, who acknowledged that, while the prosecutor was free "to use one of his peremptories" against Martinez, he was "certainly not [entitled] to a challenge for cause."

5

Tr. 123.

When it later came time to exercise peremptory challenges, the Assistant District Attorney challenged Martinez and prospective juror Rivera. Petitioner's counsel then raised a Batson objection to the exercise of the peremptory challenge against Rivera. Specifically, he argued that "Mr. Rivera is El Salvadorian as is the defendant. He gave the most neutral questionnaire I have seen yet. Everything was a no. Every question that was asked of him was satisfactory on its face to Mr. Hayden [the Assistant District Attorney] and to myself." Tr. 126. In response, the Assistant District Attorney argued that petitioner had not "established at this point any pattern of discrimination on our part and his Batson challenge is inappropriate at this time." Tr. 127. Petitioner's counsel responded that, of the other two prospective jurors the prosecutor challenged, one was Hispanic (Martinez) and one (Harper) "happens to be black." Id. ("[S]ince I have to establish a pattern, it's interesting of the ones that we have [aside from Rivera], we have a man of color [Harper] who's a minority [and] we have Mr. Martinez who's a minority . . .").

At this point, the Assistant District Attorney withdrew the peremptory challenge to Martinez. Tr. 128. Petitioner's counsel argued his Batson objection still stood and that he had established a prima facie case. Tr. 129. ("I haven't heard a word about Mr. Rivera, why he's being eliminated. It's obvious as I pointed out, he is being eliminated because he is of Salvadoran background.") The Assistant District Attorney responded that defense counsel (Mr. Silberg) could not "bunch minorities together [in arguing] that there has been a pattern

6

of discrimination against a particular minority" and Mr. Harper (the African-American) "has

nothing to do with this." Tr. 130. Moreover, he argued, Mr. Silberg "did not reach the

[prima facie] threshold when he cited our peremptory challenge of only two Hispanics, the

only two who are up so far. That's certainly not a pattern of discrimination." Id. But, he

continued, "the People have now withdrawn our peremptory challenge to Mr. Martinez.

There is much less a [prima facie] threshold at this point" because "we would have accepted

fifty percent of Hispanic potential jurors that are before us." Tr. 131.

The trial judge then permitted the peremptory challenge to Mr. Martinez, which was

not the subject of a Batson challenge by petitioner, to be withdrawn. He gave the following

reasons for that decision and for his holding that petitioner had failed to make a threshold

prima facie showing that the challenge of Rivera was due to fact that he was Hispanic:

> It's clear to the Court that when the initial peremptory challenge
> was challenged against Mr. Martinez, that the People certainly had
> several non racial biased reasons for challenging Mr. Martinez and
> it's within the Court's sound discretion whether or not to permit
> them to withdraw it prior to the defendant exercising any
> peremptory challenges, which they have not yet.
>
> The People are showing their good faith based upon the
> defendant's challenge, Batson challenge, with respect to Hispanics
> by offering to take Mr. Martinez back but maintaining their
> position against Mr. Rivera who they want to exercise but in effect
> would really be their first peremptory challenge based against an
> Hispanic.
>
> As I indicated, there are many clear reasons to the Court, in fact we
> had him in here for a separate discussion, Mr. Martinez, as to the
> problems that he had and I denied the People's application to
> challenge him for cause.

7

> So, the Court finds that they're going to – I'm going to permit the People to have Mr. Martinez, not to exercise their challenge against Mr. Martinez and I will deny the defendant's <u>Batson</u> challenge as not having reached the initial threshold at this point. <u>However, the Court will keep it in mind as we proceed. So certainly we should keep both the questionnaire and the card of him or a copy of the card of Mr. Rivera.</u>

Tr. 131-32 (emphasis added).

The holding that a pattern of discriminatory challenges had not been established "at this point" was not unreasonable, even if the withdrawal of the challenge to Martinez is disregarded. The challenges of Martinez and Rivera took place in the first round of jury selection, before it was clear how many Hispanic jurors would be subject to peremptory challenges and before a complete record had been made. Particularly apposite is <u>Overton v. Newton</u>, 295 F.3d 270 (2d Cir. 2002), where seven of ten African-American jurors were challenged in the first two rounds. <u>Id.</u> at 273. Nevertheless, the Second Circuit concluded that — at the stage at which the <u>Batson</u> objection was raised — it could not say that the judge acted unreasonably in holding that petitioner had not established a pattern of discrimination sufficient to make out a <u>prima facie</u> case. <u>Id.</u> at 279-80 ("We cannot say on this record, that the trial judge's refusal to implement <u>Batson</u>'s process for testing each questioned challenge mid-way in the process was an unreasonable application of <u>Batson</u> requirements."). Indeed, consistent with <u>Overton</u>, the trial judge here reserved the option of reconsidering his ruling. Again, while he held that the initial <u>prima facie</u> threshold had not been reached "at this point," he observed that "the Court will keep it in mind as we proceed. So certainly we should keep both the questionnaire and the card of him or a copy of the card of Mr. Rivera." Tr. 132. Petitioner never asked the trial judge to revisit his ruling regarding Mr. Rivera.

An inference of discrimination is also undercut by the fact that the victim of the crime and six of the witnesses were Hispanic, Hernandez v. New York, 500 U.S. 352, 370 (1991), and by the fact that there was ample justification for the strike of one of the two Hispanic jurors (Martinez) initially challenged. Although it is arguable whether "minorities" constitute "a cognizable racial [or ethnic] group," Batson v. Kentucky, 476 U.S. 79, 96 (1986), even if a pattern of discrimination could be based on a challenge to "minorities,"as opposed to a distinct group, there was also ample reason in the record for the challenge to Harper, the African-American juror who was challenged at the same time as Rivera and Martinez. While the prosecutor offered no explanation at the time he exercised the peremptory challenge, Harper had told the trial judge that he had a relative who had been convicted of a crime, Tr. 78-80, and he had expressed dissatisfaction with the manner in which the police had investigated an automobile accident in which he was involved. Tr. 106-09. Moreover, although the prosecutor went on to exercise seven peremptory challenges, Tr. 202, 204, 264, 345-46, 346-47, 374, 375, only one of which (to be discussed below) provoked a Batson challenge, petitioner never made any record of the number of minorities who were subject to peremptory challenges or who were empaneled, nor is there any record of the percentage of minorities on the venire.

The only wrinkle in this analysis comes from the inference to be drawn from the withdrawal of the peremptory challenge to Martinez as to which a Batson objection had not been raised. The trial judge's ruling suggests that the withdrawal of the peremptory challenge influenced his ruling that petitioner had not established a prima facie case. The only argument petitioner made in his Appellant Division brief with regard to the challenge

to Martinez was that it was motivated by a concern that petitioner had established a pattern of discriminatory action. Pet. App. Div. Brief at 22. Nevertheless, even before he withdrew the challenge to Martinez, the Assistant District Attorney argued correctly that a pattern of discrimination sufficient to establish a prima facie case had not been established "at this point." Tr. 127 ("He hasn't established at this point a pattern of discrimination on our part and his Batson challenge is inappropriate"). Moreover, he continued to argue that defense counsel "cannot bunch minorities together" to establish a pattern. Tr. 130. In any event, while petitioner may be correct in arguing that the withdrawal of the Martinez challenge is irrelevant to the issue of whether petitioner had established a pattern of discriminatory strikes, it does not alter the objective reasonableness of the conclusion that such a pattern had not yet been established.

The Second Circuit has referred to the "elusive nature of the inquiry" in which a trial judge must engage when determining whether a defendant has raised an inference of discrimination sufficient to establish a prima facie case. United States v. Diaz, 176 F.3d 52, 76 (2d Cir. 1999). If I were the trial judge, I would have asked the Assistant District Attorney for an explanation for the challenge to Rivera, if only because the fast moving process of jury selection, which requires on-the-spot judgments, often is not conducive to considering carefully and resolving correctly a nuanced issue of law. See Rico v. Leftridge-Byrd, 340 F.3d 178, 182 (3d Cir. 2004). In case of doubt, the safer course is to ask for the reason for the challenge and resolve the ultimate issue of the credibility of the prosecutor's explanation. In any event, I cannot say petitioner's claim, that a pattern of discriminatory challenges had been established at the time of the challenge to Rivera, was unreasonably

rejected.

On this score, I briefly address the fact that the <u>Batson</u> claim was one of those rejected by the Appellate Division as "unpreserved for appellate review or without merit." Notwithstanding this facial uncertainty as to the basis for the holding on the <u>Batson</u> claim, there is a clear basis for concluding with sufficient certainty that the Appellate Division actually resolved the merits of the <u>Batson</u> challenge to Rivera and that it did not conclude that it was unpreserved. The only part of petitioner's <u>Baston</u> claim that the Assistant District Attorney argued was unpreserved, a claim that I will shortly address, was the argument that the trial judge erred in accepting the race-neutral explanation offered with respect to two jurors. See Pet. App. Div. Brief at 26, 28, and 31. The Assistant District Attorney did not argue in the Appellate Division that petitioner has not preserved the claim that a <u>prima facie</u> case had not been established with respect to the peremptory strike exercised against Rivera. Indeed, there would not have been any legal basis for such an argument. Under these circumstances, the Appellate Division holding on the merits is entitled to AEDPA deference.

According the trial judge's ruling such deference, I am unable to say that it went so far beyond mere error as to be unreasonable. See <u>Francis v. Stone,</u> 221 F.3d 100, 114 (2d Cir. 2000). Moreover, in a recent opinion I argued that procedural missteps in applying <u>Batson</u> should be subjected to harmless error analysis in habeas corpus proceedings and that, in cases involving such errors, a petitioner who could not establish that he was prejudiced by a violation of his constitutional right to a fair trial should not be entitled to habeas corpus relief. See <u>Reyes v. Greiner,</u> 340 F. Supp. 2d 245, 260-78 (E.D.N.Y. 2004). I also acknowledged that this argument was foreclosed by Second Circuit precedent. See <u>Tankleff</u>

v. Senkowski, 135 F.3d 235, 248 (2d Cir. 1998). In the course of the opinion, I described in detail the manner in which the New York courts were applying Batson in good faith. Reyes, 340 F. Supp. 2d at 274-276. This record should bear on the strictness with which the AEDPA standard of deference is applied. Cf. Washington v. James, 996 F.2d 1442, 1450 (2d Cir. 1993) (Meskill, J.) ("A state court system that purposefully and unjustifiably violates a defendant's federal rights cannot be entitled to the same deference as a system that makes only innocent mistakes."), cert. denied, 510 U.S. 1078 (1994).

I now turn to the second prong of petitioner's Batson claim relating to the acceptance of the race-neutral explanations for the exercise of peremptory challenges against prospective juror Mays, an African-American who was challenged after the second round of the voir dire, and to prospective juror Harper, also an African-American, who had been peremptorily challenged in the earlier round. Specifically, petitioner's argument was that, although "the prosecution attempted to offer race neutral reasons for wishing to eliminate these two potential jurors from the jury . . ., the explanations were pretextual. The Trial Court erred in ruling they were not pretextual." Pet. App. Div. Brief at 21.

My reading of the transcript does not reveal that a Batson objection had been made to the peremptory challenge of Mr. Harper. Again, Mr. Harper was challenged peremptorily after the first round of the voir dire and petitioner merely cited the challenge to Harper as part of a pattern of discrimination that supported his challenge to Rivera. The entire argument centered around the challenge to Rivera. The only Batson objection made after the second round was to prospective juror Mays. Tr. 208 ("I'm making a Batson challenge in regards

to the prosecutor's elimination of Ms. Mays.") Indeed, the only party who mentioned Harper by name in the second round was the Assistant District Attorney. Tr. 211.

A colloquy then ensued as to whether the defendant had established a pattern of discriminatory challenges. Arguing that petitioner had not made out a pattern of discrimination against African-Americans, the Assistant District Attorney explained the reasons for his challenge to Harper in the earlier round, as well as for the challenge of Mays. Tr. 211. Ultimately, the trial judge held that a prima facie case had not been made out with respect to the exercise of the peremptory challenge with respect to Harper and Mays, although he went on to complete the three-step Batson inquiry with respect to Mays and possibly with respect to Harper.

The race-neutral reasons for the exercise of the peremptory challenge of Harper were that he "had a nephew who had spent the last year and a half in the Nassau County corrections center" and "[h]e certainly had a certain amount of sympathy for that nephew." Tr. 211. In addition, the prosecutor explained that Mr. Harper expressed concern to the Court about an accident that he had been involved in with a drunk driver and he was "troubled that the police officer who made out an accident report had not mentioned in the report that the driver of [the] other vehicle was intoxicated at the time of the accident." Tr. 211. The Assistant District Attorney also explained that he challenged Ms. Mays because she "said she tends to identify with the defendant because she too is a member of a distinct minority group, she said she would favor the defense, give the defense an edge because of

13

her identification with the defendant in this case." Tr. 212. The colloquy relating to Mr. Harper appears at Tr. 78-79, 106-109. The basis for the peremptory challenge to Ms. Mays appears to be based on the voir dire that was conducted by the attorneys, which unlike the part of the voir dire conducted by the trial judge, was not recorded. Tr. 200. Petitioner did not challenge the accuracy of the District Attorney's description of Ms. Mays's responses and he may not do so here. 28 U.S.C. § 2254(d)(2). Indeed, even the recorded voir dire conducted by the trial judge may have raised a red flag. The relevant part of the colloquy with Ms. Mays reads as follows:

| | |
|---|---|
| THE COURT: | Everything you heard so far, you think you can be fair in this kind of case? |
| PROSPECTIVE JUROR: | Yes. |
| THE COURT: | Yes. You say that slightly hesitatingly. Why do you say it that way? |
| PROSPECTIVE JUROR: | No reason. I just said yes. |

Tr. 151.

These circumstances suggest a compelling case for the exercise of the peremptory challenge of Mays, and a reasonable basis for the peremptory challenge of Harper. Indeed, petitioner did not make any plausible argument to the contrary in his brief in the Appellate Division, although in his Reply Brief he argued for the first time that, during the course of the voir dire, the Assistant District Attorney did not challenge two other jurors who were not African-Americans or Hispanics and who could have been challenged for the same reason as Mr. Harper. Pet. Reply Brief at 6. This is not factually accurate, because the other jurors simply said that they had relatives who had been convicted of a crime. There was somewhat

14

more to the prosecutor's objection to Mr. Harper than that he had a relative who had been convicted of a crime. More to the point, petitioner never called the allegedly inconsistent use of race-neutral reasons to the attention of the trial judge. This omission is particularly significant, because one of the two jurors cited by petitioner was not questioned until much later in the proceeding, Tr. 329, and the other earlier in the process. Tr. 188. Indeed, because of this omission, there is nothing in the record to suggest the race of either of those two jurors. Under these circumstances, the trial judge's credibility finding was not clearly erroneous. As Chief Judge Kaye wrote in a case involving a similar omission:

> Defendant's claim that these reasons were pretextual rests on his allegation that the gender-neutral reasons offered at the Batson hearing were not applied equally to exclude women from the jury who exhibited the same characteristic. That circumstance is among the factors we have identified as raising an inference of discrimination, People v. Bolling, 79 N.Y.2d 317 324, 582 N.Y.S.2d 950, 591 N.E.2d 1136, supra. Apparently uneven application of neutral factors may not always indicate pretext, however, but simply an incomplete understanding of the full reasons for the prosecutor's decision to seat some jurors while challenging others. For that reason, where counsel has perceived something suggesting a discriminatory motive in the questioning of a prospective juror, we require that those concerns be fully articulated to the trial court during its factual inquiry.

People v. Allen, 86 N.Y.2d 101, 110-11 (1995) (internal citations omitted). This prudential rule applies equally here, where the reasonableness of the trial judge's ruling depends on facts that are called to his attention or of which he otherwise has in mind at the point at which he ruled. See Overton v. Newton, 295 F.3d 270 (2d Cir. 2002).

I add this word about the issue of AEDPA deference. Unlike the first prong of petitioner's <u>Batson</u> claim, the Assistant District Attorney argued that this prong was unpreserved, and it is possible that it was decided on that ground and not on the merits. Whether this possibility precludes AEDPA deference is of little practical consequence here to the claim that the trial judge erred in crediting the race-neutral explanation of the Assistant District Attorney. The resolution of this prong of petitioner's <u>Batson</u> claim turns on a credibility finding by the trial judge, and it is entitled to deference in any event. 28 U.S.C. § 2254(e)(1). Indeed, the Supreme Court has held that, even on a direct appeal from a New York State judgment of conviction, a trial judge's finding on discriminatory intent should not be disturbed unless it is clearly erroneous:

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in <u>Batson</u>, the finding "largely will turn on evaluation of credibility." In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

<u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991) (internal citations omitted). Under these circumstances, it is not necessary to tarry long with the issue of whether AEDPA deference would be mandated with respect to the application of the law to the facts.

There is an issue lurking here that was not only not raised at trial, but was conceded

away in petitioner's Appellate Division brief and in his letter for leave to appeal to the Court of Appeals. I raise it sua sponte. Specifically, in allowing the peremptory challenge to Mays and Harper, the trial judge did not state in haec verba that he credited the race-neutral explanation of the Assistant District Attorney. The issue is whether the finding was implicit and whether such an implicit finding suffices. I have recently discussed at length the issue of when an implicit ruling will suffice in these circumstances. Reyes v. Greiner, 340 F. Supp. 2d at 254-261. I concluded that the Supreme Court had held that deference was due to implicit findings of fact, id. at 256-57, and that the Second Circuit cases in this area merely required sufficient assurance that the trial judge had actually ruled – either explicitly or implicitly – on the credibility of the race-neutral explanation. Id. at 258-61. I set forth the discussion of the issue in Reyes as it relates to the Supreme Court cases.

Title 28 U.S.C. § 2254(e)(1) provides that: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "[T]he presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." McQueen v. Scroggy, 99 F.3d 1302, 1310 (6th Cir. 1996) (citation omitted). Significantly, an explicit finding of fact is not required to trigger the presumption of correctness. As the Court explained in Townsend v. Sain, 372 U.S. 293 (1963):

> If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia.

Id. at 314. The Supreme Court has repeatedly held that a habeas court may apply the presumption of correctness to factual findings (including credibility determinations) that were not explicitly stated by the trial judge but could be inferred from his legal conclusion. See Marshall v. Lonberger, 459 U.S. 422 (1983) (trial judge's legal conclusion that defendant's guilty plea to a previous charge was admissible into evidence contained an implicit factual determination that defendant's testimony that he had not been given opportunity to review the indictment for the charged offense lacked credibility); LaValee v. Delle Rose, 410 U.S. 690 (1973) (trial judge's legal conclusion that defendant's confessions to the police were voluntary and legally admissible in evidence contained an implicit factual determination that defendant's testimony that his confessions were the result of police coercion was not credible); see also Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000) (Becker, C.J.) (pursuant to the teachings of Marshall and LaValee, "our duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it"); Whitaker v. Meachum, 123 F.3d 714, 715 (2d Cir. 1997) (on federal collateral review, "deference is owed 'to implied as well as express findings of fact'" (quoting Ventura v. Meachum, 957 F.2d 1048, 1055 (2d Cir. 1992))); McQueen, 99 F.3d at 1310 (the presumption of correctness "applies to implicit

findings of fact, logically deduced because of the trial court's ability to adjudge . . . demeanor and credibility").

The Supreme Court's decision in <u>Wainwright v. Witt</u>, 469 U.S. 412 (1985), a habeas corpus case, is particularly apposite. There, the factual issue presented was whether "juror Colby was properly excused for cause." <u>Id.</u> at 430. Although the state trial judge had excused the prospective juror without an explicit factual finding that he was biased, the Supreme Court held that the finding of bias was implicit in the decision of the trial judge to excuse the prospective juror. Then-Justice Rehnquist, speaking for the Court, wrote:

> [W]e conclude that juror Colby was properly excused for cause. Applying the analysis required by § 2254(d), we have already determined that the question of challenge for bias is a "factual issue" covered by the section. Nor does respondent seriously urge that the trial court's decision to excuse juror Colby for bias was not a "determination after a hearing on the merits." . . . . *Nor do we think under the circumstances that the judge was required to announce for the record his conclusion that juror Colby was biased, or his reasoning. The finding is evident from the record.* <u>See</u> <u>Marshall v. Lonberger</u>, 459 U.S. at 433. In this regard it is noteworthy that in this case the court was given no reason to think that elaboration was necessary; defense counsel did not see fit to object to juror Colby's recusal, or to attempt rehabilitation.

<u>Id.</u> at 430-31 (footnote omitted) (emphasis added); <u>accord</u> <u>Jones v. Butler</u>, 864 F.2d 348, 362 (5th Cir. 1988) (holding that state court's refusal to dismiss a prospective juror for cause based on an asserted lack of impartiality reflected an implicit factual finding that the juror was not biased).

In the present case, the trial judge found that there was a race-neutral reason for the peremptory challenge of Mays and that "the court will permit the People to use it in case a

higher court were to find that you did reach the [prima facie] threshold." Tr. 213. Any common sense reading of the record in this case suggests that the trial judge implicitly credited the race-neutral reasons for the peremptory challenge of Mays. Indeed, this could have been the only basis for his holding that, even if a prima facie case had been established, he would have permitted the prosecutor to exercise his peremptory challenge of Mays. While the language could have more clearly stated that the trial judge credited the race-neutral reasons for the challenge to Mays, it was sufficiently implicit.

The trial judge's explanation of his ruling on Harper is somewhat less clear than his explanation of his ruling on the peremptory challenge of Mays. Tr. 212. Specifically, the trial judge observed that petitioner had not reached the prima facie threshold "with respect to the particular juror and so that the record is clear in case another court were to find differently, the court finds that what's been stated with respect to Harper is race neutral." Tr. 212. Since it was obvious that the reason stated by the prosecutor for the peremptory challenge of Harper was race-neutral, it is possible that what the judge meant to say was the same thing he said with respect to Mays, that is if a higher court were to find otherwise on the issue of the prima facie case, he would permit the challenge to be exercised. Indeed, this is how petitioner interpreted it in his Appellate Division Brief. Specifically, petitioner wrote, "[t]he Court stated that, even if a higher Court found that the [prima facie] threshold had been met, it accepted the People's race-neutral explanations for excluding Mr. Harper and Ms. Mays (Tr. 213)." Pet. App. Div. Brief at 6; at a later point he again acknowledged that

"the trial judge accepted the People's race neutral explanations for excluding Mr. Harper and Ms. Mays (Tr. 213)," Id. at 23. Similarly, in his letter seeking leave to appeal to the Court of Appeals he acknowledged that "[t]he trial court accepted the People's race-neutral explanation for excluding Mr. Harper and Ms. Mays." Letter from Amy L. Colvin to the Clerk of the Court of Appeals dated August 3, 2000. Based on this premise, he argued "the Trial Court erred in ruling they were not pretextual." Pet. App. Div. Brief at 21. These concessions are sufficient to render the claim unexhausted and now procedurally forfeited. See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).

More significantly, as a matter of policy, it is difficult to justify habeas corpus relief on the ground that the judge failed to rule on the credibility of the race-neutral explanation when petitioner did not question the adequacy of the finding in pressing his Batson objection during jury selection and he conceded the issue on direct appeal. After all, the principal justification for habeas corpus review in a case such as this, where the right allegedly violated was of the prospective juror and not that of the defendant, Edmonson v. Leesville Concrete Co., 500 U.S. 614, 618 (1991); Powers v. Ohio, 499 U.S. 400 (1991), is that the state courts may be unwilling to enforce the Constitution. See Rose v. Mitchell, 443 U.S. 545, 563 (1979). Where errors have not been corrected because they are not called to the attention of the state courts, the failure of the defendant and not the hostility of the state courts is the cause of the problem. As I wrote in Reyes v. Grenier, this is not an issue of procedural forfeiture, rather it involves a fundamental consideration that goes directly to the

issue of whether any "cause for collateral review...exists." 240 F. Supp. 2d at 273 (quoting Reed v. Farley, 512 U.S. 339, 349 (1994)).

Of course, this is all somewhat beside the point, because petitioner never raised a Batson objection with respect to Harper. Such an objection is required by Batson to preserve the issue. See United States v. Lopez, 147 F.3d 1, 3 (1st Cir. 1998); see also McCrory v. Henderson, 82 F.3d 1243, 1249 (2d Cir. 1996) (holding "that the failure to object to the discriminatory case of peremptory challenges prior to the conclusion of jury selection waives the objection"). The waiver rule derives from the failure to comply with a procedural rule that is mandated by the substantive right rather than from the failure to comply with a state procedural rule; it is "[a]nalytically distinct from the procedural bar." See Tankleff, 135 F.3d at 247. In this respect it is similar to the rule that a defendant must object to his exclusion from a part of his trial, id.; see also United States v. Gagnon, 470 U.S. 522, 528-29 (1985), and to the rule that a defendant cannot obtain relief based on the failure of the trial judge to consider alternatives to closure unless he suggested alternatives for consideration. See Ayala v. Speckard, 131 F.3d 62, 71 (2d Cir. 1997) (en banc). Nor may he complain about the exclusion of his family members unless he specifically requested an exemption for them from the order closing the courtroom to the public. See Brown v. Kuhlmann, 142 F.3d 529, 538 (2d Cir. 1998). Because petitioner failed to object to the peremptory challenge of Harper, any inadequacy in the language used by the trial judge can hardly provide the basis for a reversal of the conviction or a remand for a ruling on a non-existent objection.

Moreover, while I have posited one explanation for the language used by the trial judge when he discussed the peremptory challenge of Harper, another explanation for the failure of the trial judge to say that he would permit the peremptory of Harper to be exercised – the words he used in rejecting the <u>Batson</u> objection to the challenge of Mays – is that petitioner had never raised a <u>Batson</u> objection with respect to <u>Harper</u>; the trial judge's comments may simply have been directed to the prosecutor's effort to explain why the challenge to Harper did not establish a <u>prima facie</u> case. Under this view, the failure of petitioner to raise a <u>Batson</u> objection with respect to Harper implicates directly the policy considerations that require a contemporaneous objection.

While I conclude that the trial judge's credibility ruling has not been overcome by clear and convincing evidence, I add this footnote. The general rule is that, "[o]nce a prosecutor has offered a race neutral explanation for a peremptory challenge, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made out a <u>prima facie</u> case is moot." <u>Hernandez v. New York</u>, 500 U.S. 352, 359 (1991). The only issue on appeal is the validity of the ruling on the credibility of the prosecutor's explanation. <u>But cf. United States v. Diaz</u>, 176 F.3d 52 (2d Cir. 1999) (holding that it is not necessary on appeal to resolve the correctness of the ultimate credibility issue if the ruling on the <u>prima facie</u> case is correct.) The <u>Hernandez</u> holding simply reflects the common sense view that, after the trier of fact has resolved the ultimate issue after a hearing on the merits, it makes little sense to review the question of whether the

trial judge erroneously denied what in essence was the winning party's motion for summary judgment. In this case, the trial judge held that petitioner had <u>not</u> established a <u>prima facie</u> case with respect to the <u>Batson</u> objection involving Harper and Mays, although the prosecutor provided race-neutral reasons during the colloquy that followed the <u>Batson</u> objection. If the articulated reasons are held to be insufficient to assure that the trial judge actually ruled on the credibility of the prosecutor's case, then it is appropriate to refer to the initial inquiry of whether a <u>prima facie</u> case had been established. I believe that the <u>prima facie</u> ruling as to Harper and Mays was correct for much the same reason as it was with respect to juror Rivera. Indeed, given the response of Mays at the <u>voir dire</u>, her challenge in the second round added nothing to petitioner's <u>prima facie</u> case. The only error the trial judge made was in not excusing Mays for cause. Tr. 205.

Although I have only addressed two of them, I have considered each of petitioner's grounds for relief and find them to be without merit.

### Conclusion

The petition for a writ of habeas corpus is denied. I grant a certificate of appealability with respect to the two prongs of the <u>Batson</u> issue.

### SO ORDERED:

Brooklyn, New York
December 13, 2004
Corrected: April 26, 2004

_s/ Judge Edward R. Korman

Edward R. Korman
United States Chief District Judge